Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| K9 SPORT SACK, LLC,<br><br>            Plaintiff,<br><br>        v.<br><br>LITTLE CHONK COMPANY,<br><br>            Defendant. | Civil Action No. 22-5120 (ES)<br>(CLW) OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff K9 Sport Sack, LLC filed this action bringing claims for direct and indirect patent infringement against Defendant Little Chonk Company. (D.E. No. 11 ("Amended Complaint" or "Am. Compl.")). Before the Court is Defendant's motion to dismiss Plaintiff's indirect infringement claims. (D.E. No. 21). Having considered the parties' submissions and having held oral argument on the motion on May 31, 2023, the Court is prepared to rule. For the following reasons, Defendant's motion is **GRANTED-in-part** and **DENIED-in-part.**

**I.     BACKGROUND**

    **A.     Factual Allegations**

This is a patent infringement action brought by Plaintiff against Defendant. According to the Amended Complaint, Plaintiff is "an industry leader in pet-carrying products" and "has introduced a number of pet carrying and pet related products under a variety of different brands." (Am. Compl. ¶¶ 9–10). Plaintiff alleges that it "developed its pet carrying products to solve problems associated with pet comfort and safety, giving both pets and pet owners greater flexibility, safety, and comfort while transporting a pet in day-to-day activities with the pet owner." (*Id.* ¶ 11). As alleged in the Amended Complaint, Plaintiff is the owner of many patents relating

1

to and covering its pet carrying products, including U.S. Patent No. 11,272,685 (the "'685 Patent" or "Asserted Patent"). (*Id.* ¶ 12). The '685 Patent is entitled "Pet Carrying Backpack" and was issued on March 15, 2022. (D.E. No. 11-1, Ex. 1 ("'685 Patent") to Am. Compl.). The '685 Patent is directed to a pet carrying backpack that allows "pet owners to bring their pets with them on various activities." ('685 Patent at 1:32–47). The '685 Patent claims, among other things, the following:

> 19. A pet carrying backpack comprising:
>
> a backpack body comprising an interior compartment configured to support a pet therein;
>
> a collar forming a first opening in a top portion of the backpack body, the collar being configured to allow a head of the pet supported in the interior compartment to protrude therethrough;
>
> shoulder straps disposed on and extending from the backpack body;
>
> at least one second opening in the backpack body to accommodate a paw or leg of the pet, the at least one second opening being disposed above the shoulder straps and below the collar; and
>
> one or more contouring straps disposed on the backpack body that are configured to shape the interior compartment of the backpack.

('685 Patent at 8:49–64).

According to the Amended Complaint, Defendant markets and sells a pet carrying backpack referred to as the "Maxine One" (or "Accused Product"). (Am. Compl. ¶ 28). Plaintiff asserts that Defendant is (i) directly infringing and (ii) indirectly infringing at least Claim 19 of the '685 Patent. First, Plaintiff alleges that Defendant is directly infringing at least Claim 19 of the '685 Patent by making, using, selling, offering for sale and/or importing into the United States the Maxine One. (*Id.* ¶¶ 37–41). Second, Plaintiff alleges that Defendant is indirectly infringing at least Claim 19 of the '685 Patent by both (a) inducing infringement and (b) contributing to the

infringement of the Asserted Patent. (*Id.* ¶ 42). More specifically, Plaintiff claims that Defendant induces its customers to infringe the claims of the '685 Patent because the marketing material and literature for the Maxine One instructs its customers and other users how to use the Maxine One in a way that infringes at least Claim 19 of the '685 Patent. (*Id.* ¶¶ 42–52). Plaintiff also alleges that Defendant has contributed and is contributing to the infringement of the '685 Patent by providing the Maxine One to its customers knowing that the Maxine One is especially made for a use that infringes at least Claim 19 of the '685 Patent. (*Id.* ¶¶ 53–54).

### B. Procedural History

Plaintiff initiated this action against Defendant on August 19, 2022. (D.E. No. 1 ("Complaint" or "Compl.")). On October 24, 2022, Plaintiff filed the Amended Complaint bringing claims against Defendant for (i) direct infringement under 35 U.S.C. § 271(a); (ii) induced infringement under 35 U.S.C. § 271(b); and (iii) contributory infringement under 35 U.S.C. § 271(c). (Am. Compl. ¶¶ 35–56). On November 7, 2022, Defendant moved to dismiss Plaintiff's (i) induced infringement and (ii) contributory infringement claims. (D.E. No. 21; D.E. No. 21-1 ("Mov. Br.")). The motion is fully briefed. (D.E. No. 22 ("Opp. Br."); D.E. No. 28 ("Reply")). The Court held oral argument on the motion on May 31, 2023, to specifically address Plaintiff's contributory infringement claim. (D.E. No. 34). At oral argument, Plaintiff agreed to dismiss its contributory infringement claim *without prejudice*. (*Id.*). The Court is now prepared to rule.

## II. LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. V. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the

elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.     DISCUSSION

### A.     Induced Infringement

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Allegations of induced infringement are subject to *Twombly* and *Iqbal*'s plausibility pleading standards. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). In addition to showing direct infringement,[1] a plaintiff asserting a cause of action for induced infringement must also show that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part)). Knowledge of the patent, without knowledge of infringement, is not enough to establish liability for induced infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). Accordingly, "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly

---

[1]     The parties do not dispute the adequacy of Plaintiff's allegations of direct infringement.

4

showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading*, 681 F.3d at 1339). "This does not mean, however, that [plaintiff] must prove its case at the pleading stage." *In re Bill of Lading*, 681 F.3d at 1339. A plaintiff may adequately allege that a defendant has the requisite intent to induce infringement by encouraging customers to infringe a patent—whether through marketing, or support and instructions. *See id.* at 1341–42 (holding that advertising directed toward customers to encourage the customers to utilize the patented invention was sufficient to plead defendant's specific intent).

      i.    **Pre-Suit Induced Infringement**

Defendant moves to dismiss Plaintiff's claim for induced infringement to the extent that it encompasses any pre-suit activity because the Amended Complaint lacks any factual allegations that Defendant had knowledge of the '685 Patent before service of the original Complaint. (Mov. Br. at 3–4). In response, Plaintiff clarifies that its Amended Complaint does not seek relief based on pre-suit knowledge of the '685 Patent. (Opp. Br. at 12). Nevertheless, Plaintiff asserts that it reserves the right to seek claims for indirect infringement, including induced infringement, as well as willful infringement, and enhanced damages, based on pre-suit knowledge of the Asserted Patent, should it learn through the course of discovery that Defendant had pre-suit knowledge. (*Id.* at 12–13). Defendant counters that such claims can only be brought if they are plausibly alleged in the operative pleading. (Reply at 5 n.1). The Court agrees with Defendant. There is no basis in the Federal Rules of Civil Procedure for such reservations. Should Plaintiff learn in the course of discovery that Defendant had pre-suit knowledge of the '685 Patent, it is free to seek leave to amend its Amended Complaint to add claims, including for induced infringement based on pre-

suit knowledge of the Asserted Patent. *See* Fed. R. Civ. P. 15. The decision of whether such additional claims may be added, however, is not solely at Plaintiff's discretion.[2] *North Star Innovations, Inc. v. Kingston Tech. Co.*, No. 17-1833, 2018 WL 3155258, at *4–5 (C.D. Cal. May 7, 2018), *report and recommendation adopted*, No. 17-1833, 2018 WL 3155708 (C.D. Cal. June 25, 2018) (stating that where plaintiff reserved its right to assert additional patent claims, plaintiff was free to move for leave to amend should such claims arise, but "[t]he decision of whether additional patents or claims may be added [wa]s not solely at plaintiff's discretion.").

### ii. Post-Suit Induced Infringement

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime Indus., Inc.*, 869 F.3d at 1379 (internal quotation marks omitted).

*First*, Defendant moves to dismiss Plaintiff's post-suit induced infringement claim because it asserts that Plaintiff cannot rely on the filing of its original Complaint to allege that Defendant had knowledge of the '685 Patent as is required to sustain a claim of induced infringement. (Mov. Br. at 8–9). Defendant asks that the Court follow the rule articulated by Chief Judge Connolly in *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247 (D. Del. 2021) who held that pre-suit knowledge is required to state a claim for indirect infringement, including induced infringement. (*Id.*) In response, Plaintiff argues that post-suit knowledge is sufficient for purposes of stating a claim for indirect infringement and notes that district courts in this Circuit have

---

[2] The Court notes that in its Amended Complaint, Plaintiff appears only to reserve its right to claim that Defendant's infringement is willful and Plaintiff is entitled to treble damages interest, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 should Plaintiff learn, through the course of discovery, that Defendant had knowledge of the Asserted Patent prior to the filing of the original Complaint. (Am. Compl. ¶ 34). Plaintiff does not appear to reserve its right to bring indirect infringement claims based on such knowledge. Nevertheless, regardless of what it learns through discovery, the decision of whether such additional claims may be added, is not solely at Plaintiff's discretion. *North Star Innovations, Inc.*, 2018 WL 3155258, at *5.

routinely found that post-suit knowledge is sufficient for purposes of stating a claim for indirect infringement, including induced infringement, occurring after the filing date of the complaint. (Opp. Br. at 13). For the reasons set forth below, the Court agrees with Plaintiff.

District courts across the country are divided over whether a defendant must have the knowledge necessary to sustain claims of indirect infringement, including induced infringement, before the filing of the lawsuit. *See ZapFraud, Inc.*, 528 F. Supp. 3d at 249 n.1 (collecting cases). Some district courts have held that pre-suit knowledge is an absolute requirement, reasoning that "[t]he purpose of a complaint is to obtain relief from an existing claim and not to create a claim." *Id.* at 251 (quoting *Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792, 2020 WL 3167641, at *2 n.1 (D. Del. June 15, 2020)). Other district courts have held that "the filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date." *Softview LLC v. Apple Inc.,* No. 10–0389, 2012 WL 3061027, at *7 (D. Del. July 26, 2012); *see also WAG Acquistion, LLC v. Multi-Media, LLC*, No. 14-1661, 2015 WL 5310203, at *8 n.6 (D.N.J. Sept. 10, 2015) (same); *see also Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012) (permitting induced infringement claims based on post-suit conduct); *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-0098, 2019 WL 3069773, at *3 (D. Del. July 12, 2019) (same). Neither the Federal Circuit nor the Supreme Court appear to have addressed the issue.

In the absence of binding authority from the Federal Circuit or Supreme Court, the Court maintains its belief that post-suit knowledge is sufficient for purposes of alleging indirect infringement, including inducement. *WAG Acquistion, LLC*, 2015 WL 5310203, at *8 n.6. Defendant acknowledges that this Court has previously stated that the filing of a complaint can be used to plead knowledge for indirect infringement allegations. (Mov. Br. at 9). However, in asking

that the Court now reach the opposite conclusion, Defendant requests that the Court consider the policy considerations articulated by Chief Judge Connolly in *ZapFraud*. (*Id.*). More specifically, in *ZapFraud*, Chief Judge Connolly stated that permitting patent infringement plaintiffs to "allow court dockets to serve as notice boards for future legal claims for indirect infringement" strains "[t]he limited authority vested in our courts by the Constitution and the limited resources made available to our courts by Congress," and is thus "neither wise nor consistent with principles of judicial economy." *ZapFraud, Inc.*, 528 F. Supp. 3d at 251. Judge Connolly's concerns are well taken. However, the Court notes that there are competing concerns as well. For example, as other courts have pointed out, there is "no substantive difference between (i) a putative infringer learning of a patent from a plaintiff's letter a day . . . before an infringement suit is filed or served, and (ii) a putative infringer learning of the patent from the filing or service of a complaint." *Rembrandt Social Media, LP v. Facebook, Inc.,* 950 F. Supp. 2d 876, 882 (E.D. Va. 2013). And a defendant ought not avoid liability for induced infringement "simply because it happened to learn of the patent in connection with a lawsuit," particularly if it promotes infringement of the patent-in-suit after obtaining knowledge of its existence. *Id.* (internal quotation and citation omitted); *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-1345, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021) (reasoning that prohibiting a plaintiff from amending a complaint to allege post-suit knowledge "would be the equivalent of saying that the plaintiff's failure to give notice of the patents outside of litigation operated as a bar to bringing a suit for indirect infringement"). The Court finds that these competing interests outweigh the concerns raised by Chief Judge Connolly. As such, in the absence of binding authority from the Federal Circuit or Supreme Court, the Court finds that the filing of a complaint can be used to plead knowledge for indirect infringement allegations, including inducement. And because here, the Amended Complaint alleges that Defendant had

knowledge of the '685 Patent at least by way of this lawsuit and service of the original Complaint (Am. Compl. ¶ 43), the Court finds that Plaintiff has adequately alleged that Defendant had knowledge of the Asserted Patent for purposes of stating a claim for induced infringement.[3]

*Second*, Defendant moves to dismiss Plaintiff's post-suit induced infringement claim because the Amended Complaint lacks any factual allegations that Defendant engaged in inducing activities "*after* service of the original [C]omplaint when it had supposed knowledge of the '685 [P]atent." (Mov. Br. at 5–6). And it further states that Plaintiff's allegations regarding inducement are boilerplate recitations of the legal standard for inducement, and do not suffice to plausibly state a claim for inducement. (*Id.* at 6). In response, Plaintiff argues that it has specifically pled all of the elements of an inducement claim, including that Defendant continues to induce infringement. (Opp. Br. at 18–20). For the reasons set forth below, the Court agrees with Plaintiff.

To support its allegations of induced infringement, the Amended Complaint points to Defendant's marketing material and literature, and more specifically to an Instruction Sheet, which it alleges instructs Defendant's customers and other users on how to use the Maxine One in a way that infringes at least Claim 19 of the '685 Patent. (Am. Compl. ¶ 46). The Amended Complaint goes on to describe how the Instruction Sheet teaches Defendant's customers how to infringe at least Claim 19 of the '685 Patent. (*Id.* ¶¶ 47–50). And it further alleges that Defendant's customers are using the Maxine One, which includes every element of at least Claim 19 of the '685 Patent. (*Id.* ¶ 44). Based on the Instruction Sheet, Plaintiff asserts that Defendant induced infringement

---

[3] In its Opposition brief, Plaintiff also points out that it sent Defendant a cease-and-desist letter on August 22, 2022—just three days after filing the original Complaint. (Opp. Br. at 14). To the extent that Plaintiff attempts to rely on the cease-and-desist letter as providing Defendant with knowledge for purposes of stating a claim for inducement, the Court declines to consider the cease-and-desist letter as it is not a document that is "integral to or explicitly relied upon in the complaint" and thus cannot be considered on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). And regardless, the Court need not consider this letter in finding that Plaintiff adequately alleged knowledge since, as mentioned above, the Court finds that the Amended Complaint alleges that Defendant had knowledge of the '685 Patent at least by way of this lawsuit and service of the original Complaint. (Am. Compl. ¶ 43).

because Defendant specifically intended its customers to infringe and knew, at least by way of this lawsuit and as of the service of the original Complaint, that its customers' acts constituted infringement. (*Id.* ¶¶ 43 & 51–52). Defendant argues that the Amended Complaint is "bereft of any allegations that tie the instruction sheet or any other marketing materials to [Defendant's] conduct after service of the original [C]omplaint—the only time period during which it could be alleged that Chonk had knowledge of the '685 patent." (Mov. Br. at 5). It points out that the Instruction Sheet is undated and there are no allegations as to when or how the Instruction Sheet was allegedly obtained, or when or how the Instruction Sheet was allegedly made available to Defendant's customers. (*Id.* at 5–6). As such, Defendant argues that the Amended Complaint "does not plausibly allege that Chonk *specifically intended* its customers to infringe the '685 Patent and *knew* that its customers' acts constituted infringement, as is required to survive a motion to dismiss" for induced infringement. (*Id.* at 6). The Court disagrees.

Plaintiff has adequately stated a claim for induced infringement. To start, and as already stated, Plaintiff has sufficiently pled Defendant's knowledge of the '685 Patent at least as of the filing of this lawsuit and as of the service of the original Complaint. (Am. Compl. ¶ 43). In addition, Plaintiff has alleged that Defendant's customers and others have infringed and are continuing to infringe at least Claim 19 of the '685 Patent and that Defendant knew, at least as late as the service of the original Complaint and filing of this lawsuit that its customers' acts constituted infringement. (*Id.* ¶¶ 43–44 & 52).

Further, Plaintiff alleges that Defendant had the requisite intent to induce infringement by encouraging its customers to infringe the '685 Patent through specific instructions in an Instruction Sheet that it provided to those customers and alleges how the Instruction Sheet teaches customers how to use Defendant's product in a manner that infringes at least Claim 19 of the '685 Patent.

(*Id.* ¶¶ 46–52). *See In re Bill of Lading,* 681 F.3d at 1341–42 (holding that advertising directed toward customers to encourage the customers to utilize the patented invention was sufficient to plead defendant's specific intent); *see also Groove Digital, Inc. v. Jam City, Inc.*, No. 18-1331, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (finding induced infringement sufficiently pled where the accused product included instructions for directly infringing use); *ReefEdge Network, LLC v. Juniper Network, Inc.*, 29 F. Supp. 3d 455, 460 (D. Del. 2014) ("ReefEdge's allegations of Juniper's marketing activities and instructions to customers to use the accused products in an infringing manner, even after Juniper had actual notice of the alleged infringement by specific accused products as a result of the fling of the original complaint, pleads specific intent to induce infringement with sufficient particularity."). Further, Plaintiff alleges that Defendant "is inducing its customers and other users" to infringe, suggesting that Defendant is continuing to act in the aforementioned manner and provide its customers with an Instruction Sheet that allegedly teaches customers how to infringe the '685 Patent post-filing of Plaintiff's original Complaint. (Am. Compl. ¶ 51; *id.* ¶ 42 (Defendant "continues to . . . induce others to infringe the claims of the '685 Patent"). Even though the Instruction Sheet is undated and there are no allegations as to when or how the Instruction Sheet was allegedly obtained, or when or how the Instruction Sheet was allegedly made available to Defendant's customers, this is of no moment at the motion to dismiss stage, where the Court is tasked with deciding whether Plaintiff pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Because Plaintiff alleges that Defendant "continues to . . . induce others to infringe the claims of the '685 Patent," the Court finds that it is reasonable to infer that Defendant continues to induce its customers to infringe post-filing of Plaintiff's original Complaint by providing them the Instruction Sheet. (Am. Compl. ¶ 42); *See, e.g., Telecomm Innovations,*

11

*LLC v. Ricoh Co.*, 966 F. Supp. 2d 390, 395 (D. Del. 2013) (finding that the plaintiff stated a claim for induced infringement where it alleged that the defendants provided technical support to their customers on how to use products in such a way as to infringe the patented invention and alleged that "'each of the defendants is . . . inducing infringement,' suggesting that defendants are continuing to act in the aforementioned manner post-filing of plaintiff[']s complaint"); *SpaceTime3D, Inc. v. Apple Inc.*, No. 22-0 149, 2022 WL 16858515, at *4 (W.D. Tex. Nov. 10, 2022) (finding that the plaintiff stated a claim for induced infringement even where the user guides the plaintiff relied on to show that the defendant had the intent to induce infringement were created before defendant allegedly had knowledge of the asserted patents because this was "of no moment at the motion to dismiss stage," and the Court could reasonably infer that the defendants were continuing to induce infringement). And while Defendant argues that Plaintiff's remaining allegations are not sufficient to plausibly state a claim for induced infringement (Mov. Br. at 6), the Court disagrees. Given the factual allegations regarding Defendant's customers' direct infringement, Defendant's knowledge of the '685 Patent as of the filing of this lawsuit and as of service of the original Complaint, Defendant's knowledge that its customers act constituted infringement as of service of the original Complaint, and Defendant's specific intent to induce infringement, Plaintiff has sufficiently alleged that Defendant induced infringement after the filing of the instant suit. *Telecomm Innovations, LLC*, 966 F. Supp. 2d at 395 (finding that plaintiff stated a claim for induced infringement where plaintiff pled that defendants' customers and others are continuing to infringe the patent at issue, that defendants had knowledge of the patent at least as early as the filing of the complaint, and that defendants provided technical support and instructions to their customers on how to use their products in such a way as to infringe the patented invention).[4]

---

[4] In its Opposition brief, Plaintiff points to other facts which it asserts indicate that Defendant is continuing to induce infringement. For example, it states that as of November 10, 2022, the Maxine One is still available for sale

B.  **Contributory Infringement**

35 U.S.C. § 271 provides that:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). To plead contributory infringement, a patent owner must allege the following: (i) an offer to sell, sale, or import; (ii) a component of a patented machine, manufacture, combination or composition, or material or apparatus for use in practicing a patented process, constituting a material part of the invention; (iii) knowledge by the defendant that the component or material or apparatus is especially made or especially adapted for use in an infringement of such patents; and (iv) the component or material or apparatus is not a staple article suitable for substantial noninfringing use. *Rhodes Pharms. L.P. v. Indivior, Inc.*, No. 16-1308, 2018 WL 326405, at *8 (D. Del. Jan. 8, 2018) (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)); *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 491 (D. Del. 2021).

Defendant moves to dismiss Plaintiff's contributory infringement claim, in part, because the Amended Complaint fails to allege that Defendant sells a *component* of a patented product or process. (Mov. Br. at 6–8). Defendant points out that the Amended Complaint alleges that Defendant's product—the Maxine One—is itself covered by the claims of the '685 Patent. (*Id.* at

---

on Defendant's website and includes a screenshot of Defendant's website. (Opp. Br. at 15). Plaintiff further states that when a consumer purchases the Maxine One, it arrives in a box with a quick response code ("QR Code") that directs users to an instructional video, which it contends teaches customers how to use the Maxine One in a manner that infringes the '685 Patent. (*Id.* at 15–17). As Defendant points out, however, neither the Defendant's website, nor the Maxine One's packaging bearing the QR Code, nor the instructional video are "integral to or relied upon in the [amended] complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; (Reply at 2–4). As such, the Court will not consider these materials in the present motion to dismiss. And regardless, the Court finds that Plaintiff has sufficiently pled induced infringement based on the allegations already in the Amended Complaint.

7; Am. Compl. ¶ 40 (alleging that Defendant sells the Accused Product, "which includes each and every element of at least Claim 19 of the '685 Patent.")). It does not, however, allege that the "Maxine One is a component of a larger product that is itself covered by the '685 claims, as would be required by § 271(c)." (Mov. Br. at 7). As such, because Plaintiff accuses the Maxine One of directly infringing the '685 Patent and does not accuse Defendant of selling a component of a patented product or process, Defendant asserts that Plaintiff's contributory infringement allegations must be dismissed. (*Id.*).

In response, Plaintiff argues that contributory infringement claims are not limited to components of a patented product but extend also to products "specifically adapted to a patented use." (Opp. Br. at 22 (quoting *Talarico v. Marathon Shoe Co.*, 182 F. Supp. 2d 102, 106 (D. Me. 2002)). And it contends that it is possible the Court could construe one or more claims of the '685 Patent to cover not only the Accused Product, but also a particular *use* of the Accused Product. (*Id.* at 22). Specifically, as a non-limiting example, Plaintiff points out that Claim 19 recites "a collar . . . being configured to allow a head of the pet supported in the interior compartment to protrude therethrough." (Opp. Br. at 23 (citing '685 Patent at Claim 19)). Plaintiff states that an argument could be made that Claim 19 requires a user to *use* the Accused Product to allow a head of a pet to protrude through the collar. (*Id.*). As such, because the Court has yet to consider claim construction, Plaintiff asserts that "[s]hould one or more claims be construed to require a particular use of the claimed pet carrying backpack, [it] reserves its right to claim that the Accused Product constitutes a component of a patented use" in accordance with 35 U.S.C. § 271(c). (*Id.*).

On May 31, 2023, the Court held oral argument to address these competing arguments. At oral argument, the Court asked both parties whether they intended to advance a construction of the claims of the '685 Patent that includes not only a pet carrying backpack, but also a particular *use*

14

of the pet carrying backpack. After both parties confirmed that they did not intend to advance such a construction, Plaintiff agreed to dismiss its contributory infringement claim *without prejudice*.[5] Accordingly, Plaintiff's contributory infringement claim is dismissed *without prejudice*.[6]

### IV.     CONCLUSION

Based on the foregoing, Defendant's motion (D.E. No. 21) is **GRANTED-in-part** and **DENIED-in-part**. An appropriate Order accompanies this Opinion.

Dated: July 5, 2023                                                        *s/ Esther Salas*
                                                                           **Esther Salas, U.S.D.J.**

---

[5] Because Plaintiff agreed to dismiss its contributory infringement claim *without prejudice*, the Court will not consider Defendant's other arguments in support of its motion to dismiss Plaintiff's contributory infringement claim. (Mov. Br. at 3–4 & 8–9).

[6] At oral argument, Defendant requested that the Court dismiss Plaintiff's contributory infringement claim *with prejudice* because the '685 Patent recites *only apparatus claims*, and not process claims. (*See also* Reply at 9–10). As indicated on the record at oral argument, the Court finds that a dismissal *without prejudice* is appropriate here. While Defendant maintains that the '685 Patent recites only apparatus claims, the Court declines to engage in issues of claim construction at this stage. "The purposes of claim construction differ from the purposes of motions to dismiss for failure to state a claim." *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp.2d 868, 889 n.21 (N.D. Cal. 2011). The 12(b)(6) inquiry considers whether the complaint has alleged facts to support a cognizable legal theory. *Id.* In contrast, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Accordingly, the Court will not rule, at this stage of the litigation, on the construction of the '685 Patent, and dismissal with prejudice on the basis of a definitive construction is inappropriate. However, because both parties have agreed not to advance a construction of the claims of the '685 Patent that includes a particular *use* of the pet carrying backpack, a dismissal *without prejudice* is sufficient to address Defendant's concerns at this stage.